UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:19-cv-553

| | | |
|---|---|---|
| STAYSHA FISHER and CHRISTA KISSER, on behalf of themselves and all other similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| GEORGE MACK PATTERSON, II; P & A MANAGEMENT, INC.; PRAIRIE PIZZA, INC.; PATTERSON PIZZA COMPANY, LLC; TEAM LINCOLNTON, INC; MOUNTAINEER PIZZA, LLC; and MJM PIZZA, LLC, | ) ) ) ) ) ) ) ) | **(COLLECTIVE AND CLASS ACTION)** |
| Defendants. | ) ) ) | |

NOW COME Plaintiffs Staysha Fisher and Christa Kisser, on behalf of themselves and all other similarly situated persons, complaining against Defendants on a collective-action basis, pursuant to the Fair Labor Standards Act ("FLSA"), and on a class-action basis, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure and the North Carolina Wage and Hour Act ("NCWHA"), and alleging as follows.

## OVERVIEW

1.      Dating to 1981, Defendant George Mack Patterson, II has built an empire of Domino's Pizza franchises through his closely held companies, the Domino's Defendants. The chain of Domino's Pizza restaurants started in Illinois and then moved to the Carolinas. The associated chain of restaurants expanded significantly in around January 2015, when Defendant Patterson Pizza Company, LLC bought multiple Domino's Pizza franchises in North Carolina.

1

2.     During the relevant statutory period, the Domino's Defendants have owned and operated, and continue to own and operate, more than fifty (50) restaurants doing business as Domino's Pizza. All but four of the restaurants are in the state of North Carolina, with the remaining restaurants located just across the border in South Carolina.

3.     Defendants collectively own and operate the Domino's Pizza restaurants, pursuant to common employment policies and practices, and under common control and ownership.

4.     Staysha Fisher and Christa Kisser, the named Plaintiffs, are single mothers who each worked for several years for Defendants and received multiple promotions, up to general manager.

5.     Fisher and Kisser consistently worked 50 hours or more per week, sometimes up to 70 hours or more per week.

6.     Defendants expected and required the named Plaintiffs always to be "on call" and to respond at a moment's notice to the needs of their restaurants—no matter the hour of the day. Fisher and Kisser regularly received and responded to text messages after midnight from employees on the closing shifts.

7.     In instances of staffing shortages, the named Plaintiffs were required to leave home at late hours to return to their Domino's Pizza restaurant. Kisser once returned to her restaurant—a one-hour drive from her home—at 11:30 pm at night to respond to an issue.

8.     Throughout their employment, Defendants failed to pay Plaintiffs one and one-half times their regular rate of pay for overtime hours.

9.     Defendants wrongfully claim that the Plaintiffs are exempt from overtime premium pay, because they are paid on a "salaried" basis. In effect, however, Defendants treated the general managers as hourly employees.

2

10.     Plaintiffs were not, in fact, paid on a salaried basis because the Defendants adopted a policy of "docking" their pay based on the quantity and/or quality of their work, including but not limited to when Plaintiffs allegedly worked less than the "required" number of hours in a workweek, that is, fifty (50) hours per week.

11.     Each of the named Plaintiffs and all other similarly situated persons was misclassified as exempt from overtime and improperly paid at rates less than one and one-half times his or her regular rate while employed by Defendants.

12.     Defendants further violated the NCWHA, as a matter of policy and practice, by failing to pay Plaintiffs and all other similarly situated persons their promised bonus wages when due in the promised amount. Defendants deducted from Plaintiffs' paychecks, without authorization, in response to customer complaints and for other reasons.

13.     Upon information and belief, Defendants used accounting tricks to reduce the amount of bonuses paid to Plaintiffs and all other similarly situated persons, including by artificially deflating the enterprise's profit figures.

14.     Defendants actions, as set forth more fully below, were willful, not in good faith, and without a reasonable basis for believing that the conduct complied with the FLSA and/or NCWHA.

## PARTIES AND JURISDICTION

15.     Plaintiff Staysha Fisher (**"Fisher"**) is an adult resident of Catawba County, North Carolina.

16.     In January 2011, Fisher started working for a predecessor to Defendants, who also did business as Domino's Pizza. Relevant for the purpose of this action, Fisher worked for Defendants as the general manager of two Domino's Pizza restaurants: (a) at the Domino's

3

restaurant located at 2392 W NC 10 in Newton, North Carolina (hereinafter, the **"Newton Domino's"**), from before the statutory period until June 2018; and (b) at the Domino's restaurant located at 508 W. 10th St. NW, Ste. N in Conover, North Carolina (hereinafter, the **"Conover Domino's"**), from June 2018 to November 2018.

17.     Plaintiff Christa Kisser (**"Kisser"**) is an adult resident of Catawba County, North Carolina.

18.     In August 2014, Kisser started working as a customer service representative for a predecessor to Defendants, who also did business as Domino's Pizza. Relevant for the purpose of this action, Kisser worked for Defendants as the general manager of two Domino's Pizza restaurants: (a) at the Domino's restaurant located at 110-7 W. Kings St. in Kings Mountain, North Carolina (hereinafter, the **"Kings Mountain Domino's"**), from March 2017 until July 2018; and (b) at the Domino's restaurant located at 3204 Springs Rd. NE, in Hickory, North Carolina (**"Springs Road Domino's"**), from July 2018 until March 2019.

19.     Defendant George Mack Patterson, II a/k/a "Mack" Patterson (**"Patterson"**) is an adult resident of Mecklenburg County, North Carolina.

20.     Defendant **P & A Management, Inc.** is a corporation organized under the laws of North Carolina. The principal office of P & A Management, Inc. is 9107 S. Tryon St., Ste. F in Charlotte, North Carolina 28273-3125 (hereinafter, the **"Tryon Office"**). Patterson is the president and, upon information and belief, sole shareholder. According to its public filings, P & A Management, Inc. is in the business of "management." Upon information and belief, P & A Management, Inc. and Patterson, individually and collectively, are responsible for developing the wage, employment, and other policies at issue in this action.

21.     Defendant Prairie Pizza, Inc. d/b/a "Domino's Pizza" (hereinafter, **"Prairie Pizza"**) is a corporation organized in 1981 under the laws of Illinois. At all relevant times, Patterson has been the registered agent, president, and secretary of Prairie Pizza. Upon information and belief, Patterson also is the sole shareholder of Prairie Pizza. The principal office and registered office of Prairie Pizza is the Tryon Office.

22.     Prairie Pizza now owns and operates, and at all relevant times has owned and operated, approximately 36 Domino's Pizza restaurants, including without limitation the Kings Mountain Domino's. Four of the restaurants owned and operated by Prairie Pizza are located in the state of South Carolina (in and around Fort Mill, Lake Wylie, and York), while all the remaining restaurants are located in the state of North Carolina.

23.     Defendant Patterson Pizza Company, LLC d/b/a "Domino's Pizza" (hereinafter, **"Patterson Pizza"**) is a limited liability company organized in December 2014 under the laws of North Carolina. Patterson is the registered agent and managing member of Patterson Pizza. Upon information and belief, Patterson is the sole member of Patterson Pizza. The principal office and registered office of Patterson Pizza is the Tryon Office.

24.     Patterson Pizza now owns and operates, and at all relevant times has owned and operated, approximately 16 Domino's Pizza restaurants, all located in the state of North Carolina, including without limitation the Newton Domino's, the Conover Domino's, the Springs Road Domino's, and the restaurant located at 2652 Hwy 127 in South Hickory, North Carolina (hereinafter, the **"Mountain View Domino's"**).

25.     Defendant **Team Lincolnton, Inc.** d/b/a "Domino's Pizza" is a corporation organized under the laws of North Carolina. Patterson is the registered agent and president of Team Lincolnton, Inc. Upon information and belief, Patterson is the controlling shareholder of

5

Team Lincolnton, Inc. The principal office and registered office of Team Lincolnton, Inc is the Tryon Office. Team Lincolnton owns and operates, and has at all relevant times owned and operated, one Domino's Pizza restaurant in Lincolnton, North Carolina.

26.     Defendant **MJM Pizza, LLC** d/b/a "Domino's Pizza" is a limited liability company organized under the laws of North Carolina. Patterson is the manager, and P & A Management, Inc. is a member. The principal office of MJM Pizza, LLC is the Tryon Office. MJM Pizza, LLC owns and operates, and has at all relevant times owned and operated, one Domino's Pizza restaurant in Cornelius, North Carolina.

27.     Defendant **Mountaineer Pizza, LLC** d/b/a "Domino's Pizza" is a limited liability company organized under the laws of North Carolina. The principal office of Mountaineer Pizza, LLC is the Tryon Office. The manager of Mountaineer Pizza, LLC is P & A Management, Inc. Mountaineer Pizza, LLC owns and operates, and has at all relevant times owned and operated, one Domino's Pizza restaurant in Boone, North Carolina.

28.     The terms **"Defendants"** will be used throughout this Complaint to refer to each and every of the named defendants to this action, individually and collectively.

29.     The term **"Domino's Defendants"** will be used throughout this Complaint to refer to each and every of Prairie Pizza, Inc.; Patterson Pizza Company, LLC; Team Lincolnton, Inc; Mountaineer Pizza, LLC; and MJM Pizza, LLC.

30.     The term **"Patterson Defendants"** will be used throughout this Complaint to refer to George Mack Patterson, II and P & A Management, Inc, individually and collectively.

31.     At all times material to this action, Defendants were the employers of the named Plaintiffs, and were and/or are the employers of all other persons similarly situated to Plaintiffs, within the meaning of sections 203 and 216 of the FLSA and section 25.2 of the NCWHA.

6

32.     At all times material to this action, Defendants have suffered and/or permitted Plaintiffs and all other similarly situated persons to work on their behalf and paid them "wages," as those terms are used and defined in section 203 of the FLSA and section 25.2(16) of the NCWHA, and the Plaintiffs and all other similarly situated persons have been engaged in commerce.

33.     At all times material to this action, Defendants were an enterprise engaged in commerce or in the production of goods for commerce, as defined by section 203(f)(1) of the FLSA, and each of the Domino's Defendants has had an annual gross volume of sales which exceed $500,000.

34.     The overtime provisions set forth in section 207 of the FLSA apply to the Defendants. The Plaintiffs and all other similarly situated persons were covered by section 207 of the FLSA while they were employed by the same.

35.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1337 (interstate commerce), 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216 (Fair Labor Standards Act), and the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

## **JOINT EMPLOYER**

36.     Each restaurant owned and operated by the Domino's Defendants directly employs one general manager.

37.     Defendants are not disassociated with respect to the employment of Plaintiffs and all other similarly situated persons.

38.     Defendants may be deemed to share control of Plaintiffs and all other similarly situated persons, directly and/or indirectly, by reason of the fact that the Domino's Defendants are under common control.

39.     At all times material to this action, the Patterson Defendants have fully controlled the Domino's Defendants and actively participated in their management.

40.     The Domino's Defendants share the same scope of business insofar as they are, individually and collectively, in the business of retail pizza sales and do business as franchises of "Domino's Pizza."

41.     The Domino's Defendants provide the same services and products to the same customers.

42.     Defendants share facilities and equipment, as used for the work of Plaintiffs and all other similarly situated persons.

43.     The Tryon Office is the common headquarters of Defendants.

44.     Defendants share ownership, management personnel, administrative staff, and overhead expenses.

45.     The management structure of the Domino's Defendants features Patterson at the head of the enterprise, with one or more vice presidents serving beneath Patterson. Several area directors report directly to the vice president. At all relevant times, the named plaintiffs and all other similarly situated persons reported directly the area directors.

46.     John Thomas ("J.T.") Anderson (**"Anderson"**) has been the vice president of operations for both Patterson Pizza and Prairie Pizza since 2007.

47.     At all times material to this action, Patterson's twin sons, Sumner Patterson and Taylor Patterson, have been mid-level managers for the Domino's Defendants, including as area director overseeing and managing the named Plaintiffs.

48.     At all times material to this action, the Domino's Defendants further have shared Ryan Swanson as head of marketing and Will Short as the director of hiring and recruiting.

49.     At all times material to this action, Jodie Taylor (**"Taylor"**) has been "company controller" of the Domino's Defendants and, in this role, has overseen and directed the financial and administrative staff jointly employed by the Domino's Defendants at the Tryon Office.

50.     Several staff members at the Tryon Office administer payroll, tracks sales, and handle billing, marketing, and other matters for the Domino's Defendants.

51.     Defendants represent to the named Plaintiffs and all other similarly situated persons they are all "one big family," meaning they recognize and intend for a unity of operations among the Domino's Defendants.

52.     The Domino's Defendants share common employment standards, practices, and policies, including those at issue in this litigation.

53.     The schedule used by Defendants is determined by reference, not to months, but to four-week terms known as "periods." The calendar year is broken down, sequentially, by periods.

54.     Once every period, Defendants convene meetings with general managers from all the Domino's Defendants. The meetings routinely are held at the Tryon Office or, if space requires, at the Embassy Suites Hotel in Charlotte. Patterson routinely was present and led these meetings, and upon information and belief, continues to do so.

9

55.     The named Plaintiffs and all other similarly situated persons gather at these regular meetings to review sales numbers and receive directives from Defendants, including those related to employment policies and practices.

56.     The Domino's Defendants are part of a business organization that can shift as a unit from one putative joint employer to another.

57.     The Domino's Defendants share the services of employees, pursuant to an informal or formal arrangement, and the contract responsibilities of the Domino's Defendants with respect to the named Plaintiffs and all other similarly situated persons could be transferred from one legal entity to another without material changes.

58.     Documents that articulate employment policies and practices for all of the Domino's Defendants, including a "Team Member Handbook," were issued purportedly by Prairie Pizza.

59.     Upon information and belief, the Patterson Defendants created and approved all the employment policies and practices relevant to this action.

60.     The Domino's Defendants do not require employees to sign any additional paperwork to transfer from working between stores owned and operated by any of the affiliated Domino's Defendants.

61.     The Domino's Defendants issue paychecks to the named Plaintiffs and all other similarly situated persons, according to the entity that formally owns and operates the individual Domino's Pizza restaurant where he or she works and/or worked.

62.     Defendants exploit the formal distinctions among the Domino's Defendants in an attempted "end run" and otherwise evade overtime pay requirements for hourly workers.

Domino's Defendants transfer hourly employees between two or more stores formally owned and operated by different Domino's Defendants.

63.     For example, when a store owned and operated by Prairie Pizza is or was short staffed, Defendants offer and/or offered work shifts to hourly employees formally on the payroll of Patterson Pizza (and vice versa).

64.     The Domino's Defendants know and acknowledge they must pay one and one-half the regular rate of pay to these hourly employees who work more than 40 hours in a workweek—and do so, when the employees work those hours solely for Prairie Pizza or solely for Patterson Pizza.

65.     The Domino's Defendants have not and do not pay overtime premium pay to the same hourly employees who work more than 40 hours in a workweek combined between the two restaurants owned by Prairie Pizza and Patterson Pizza, respectively.

66.     The Domino's Defendants base their failure to pay overtime premium pay, in the latter instance, on the unfounded assertion that the hourly employees worked for two separate and distinct employers in the same workweek.

67.     Starting in around April 2015, Kisser worked as a shift runner at the Mountain View Domino's, a restaurant formally owned by Patterson Pizza.

68.     In March 2017, Kisser was promoted to general manager of the Kings Mountain Domino's, a restaurant formally owned and operated by Prairie Pizza.

69.     Then, in around July 2018, Kisser transferred laterally to a general manager position at the Springs Road Domino's, a restaurant formally owned by Patterson Pizza.

70.     At the time of these changes, the formal entity on her paycheck changed, as did her rate of pay. All other employment policies and practices remained unchanged across the three restaurants.

71.     Kisser transferred among the three restaurants without executing any additional paperwork or otherwise experiencing any change to the terms and condition of her employment.

72.     At all times material to this action, each of the Domino's Defendants has acted in the interest of the others, directly or indirectly, in relation to the named Plaintiffs and all other similarly situated persons.

73.     At all times material to this action, the Patterson Defendants have exercised complete operational control over the enterprise described herein and have controlled the day-to-day business operations of the Domino's Defendants.

74.     At all times material to this action, the Patterson Defendants were ultimately responsible for directing the employment practices of the Domino's Defendants, including (a) hiring and firing employees, (b) supervising and controlling work schedules and/or conditions of employment, (c) determining rates and methods of employee pay, and (d) maintaining employment records.

75.     At all times material to this action, Defendants have jointly employed the named Plaintiffs and all other similarly persons.

76.     At all times material to this action, Defendants have exercised the authority to direct, control, and/or supervise the work of the named Plaintiffs and all other persons similarly situated to Plaintiffs.

77.     At all times material to this action, Defendants have had the authority and ability to ensure that Defendants comply with the FLSA and NCWHA, as related to the named Plaintiffs and all other similarly situated persons.

### FAILURE TO KEEP RECORDS OF HOURS WORKED

78.     The Domino's Defendants issue paystubs to Plaintiffs and all other similarly situated persons. The paystubs do not accurately reflect the number of hours worked. As a matter of policy and practice, the paystubs typically reflect a rote 80 hours worked, for each two-week pay period.

79.     Defendants use "Pulse," software made by IBM, to track some but not all the hours worked by the named Plaintiffs and all other similarly situated persons.

80.     Pulse tracks only those hours worked on-premises, that is at the respective Domino's Pizza restaurant.

81.     Defendants fail to provide a system for the named Plaintiffs and all other similarly situated persons to record hours worked off-site from the Domino's Pizza restaurants.

82.     The named Plaintiffs and all other similarly situated persons worked and/or work significant numbers of hours off the premises of the Domino's Pizza restaurants.

83.     As a matter of policy and practice, Defendants expect and otherwise require the named Plaintiffs and all other similarly situated persons to be "on call" during all operating hours of their restaurants.

84.     Defendants require as a condition of employment that Plaintiffs and all other similarly situated persons they keep their personal cell phones charged and powered "on" at all such times, for work-related purposes.

85.    During Fisher's first week as general manager, she received more than 30 text messages from employees between 1 am and 3 am in one night. This was not an unusual occurrence during her time as a general manager.

86.    Kisser also received work-related calls at all hours of the night. At times as late as 11:30 pm in the evening, Kisser was required to return to the Kings Mountain Domino's, a one-hour drive from her residence.

87.    At all times material to this action, Defendants have required, as a condition of employment, or otherwise suffered and/or permitted Plaintiffs and all other similarly situated persons to perform work away from the Domino's Pizza Restaurants and have failed to keep any record of the time spent on the same (hereinafter, **"Uncounted Work"**).

88.    The Uncounted Work includes, without limitation, time spent on the following:

　　　　a.    attending company-wide management meetings at the Tryon Office (once every period), including significant travel to and from the meetings;

　　　　b.    attending area-level management meetings (twice every period), including related travel time;

　　　　c.    regularly tracking the real-time operations of the Domino's restaurants from a remote location, including by logging onto a smartphone application to view in-store security cameras;

　　　　d.    travelling back to the restaurant in the event the restaurant becomes busy or has other issues, including travel to the restaurant outside of their normal commute, i.e., on the same day they already have worked a shift at the restaurant (i.e., "call-back" travel time);

e.      logging onto the corporate website to respond to written customer complaints and to check sales figures in real-time;

f.      submitting daily reports on "load times" (i.e., the amount of time between receiving an order and loading the pizza into the oven);

g.      responding regularly and promptly to multiple communications from "shift runners," supervisors, vendors, and others, including as late as 2 am or 3 am for the closing shift;

h.      using the "Bullseye" system to review a sampling of the phone calls made to/from the restaurants for customer service and employee performance, while off-site from the restaurant;

i.      driving to other Domino's restaurants or to the headquarters in Charlotte to pick up dough or other supplies on an as-needed basis;

89.     At all times material to this action, Defendants have expected and required, as a condition of employment, or otherwise suffered and/or permitted Plaintiffs and all other similarly situated persons to perform some of the Uncounted Work every day, i.e., even on those days when they are otherwise unscheduled to work on-site at their respective Domino's Pizza restaurants.

90.     The Uncounted Work is significant and accounts for multiple hours per week for each of the named Plaintiffs and all other similarly situated persons.

91.     Defendants specifically instruct the named Plaintiffs and all other similarly situated persons not to "clock in" or otherwise record the Uncounted Work.

92.     Defendants' failure to keep accurate records of all hours worked violates section 201 of the FLSA and section 25.15 of the NCWHA.

## FLSA VIOLATIONS: "DOCKING" SALARY PAY AND UNPAID OVERTIME

93. The named Plaintiffs bring this action as a collective action on behalf of themselves and all other similarly situated persons, pursuant to Section 216(b) of the FLSA.

94. At all times material to this action, Defendants promised the named Plaintiffs and all other similarly situated persons a salary in excess of $455 per week, with a promise of additional pay on a commission basis.

95. At all times material to this action, Defendants classified named Plaintiffs and all other similarly situated persons as exempt from overtime pay requirements, pursuant to the "executive employee" exemption for certain salaried employees.

96. For purposes of the claims brought under the FLSA, "other similarly situated persons" shall refer to each and every person who was (a) employed by Defendants as a general manager of a Domino's Pizza restaurant at any time during the three years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, and (b) misclassified as exempt from overtime pay under the executive employee exemption for certain salaried workers (29 CFR § 541.100).

97. In 2016, Defendants verbally communicated an enterprise-wide policy and practice for docking the compensation of Fisher and all other similarly situated persons based on minimum hourly requirements (the **"Docking Policy"**).

98. Pursuant to the Docking Policy, Defendants required that the named Plaintiffs and all other similarly situated persons work at least 50 hours each workweek and 100 hours every two-week pay period, without regard to the Uncounted Work (the **"Minimum Hour Requirement"**).

99.     The Minimum Hour Requirement was and is based strictly on the total number of hours worked in a workweek and did not and does not make take into account the number of days worked.

100.     Pursuant to the Docking Policy,

    a.     Defendants gave the "option" to the named Plaintiffs and all other similarly situated persons who failed to satisfy the Minimum Hour Requirement in any given workweek to (a) accept a deduction to banked paid time off ("PTO"), or else (b) accept a docked (reduced) paycheck.

    b.     Defendants gave no option to the named Plaintiffs and all other similarly situated persons who failed to satisfy the Minimum Hour Requirements—and who did not have any banked PTO. In these cases, the named Plaintiffs and all other similarly situated persons had no choice but to accept a docked (reduced) paycheck.

    c.     Defendants docked the paychecks in an amount purportedly proportional to the number of hours short of the Minimum Hour Requirement.

101.     Defendants threatened to enforce and, in fact, regularly enforced the Docking Policy against Plaintiffs and all other similarly situated persons, when they "weren't making their hours."

102.     The effect of the Docking Policy and Defendants' aggressive enforcement of the same was to pressure the named Plaintiffs and all other similarly situated persons to work in excess of 50 hours per workweek each and every workweek.

103.     The Docking Policy is not included in the "Team Member Handbook" and has never formally been reduced to writing.

104.	At all times material to this action, Defendants failed to adopt a written PTO or leave policy with any specificity.

105.	Pursuant to the Docking Policy, Defendants docked Fisher's pay three times in statutory period, that is for the pay periods ending on April 22, 2018; May 6, 2018; and October 7, 2018.

106.	Defendants arrived at the amount to dock Fisher's paycheck for the period ending April 22, 2018 by dividing her weekly "salary" of $715 by 40 hours, resulting in an "hourly" rate of $17.875 per hour. Because Fisher allegedly had fallen short of the Minimum Hour Requirement by eight hours, Defendants reduced Fisher's "salary" by eight hours at this rate (i.e., 8 x $17.875 = $143).

107.	Defendants similarly docked Fisher's paycheck by $143 for the period ending on May 6, 2018.

108.	Defendants arrived at the amount to reduce Fisher's paycheck for the period ending October 7, 2018 by taking a percentage based on 100 hours in the pay period. Because Fisher allegedly had fallen short of the Minimum Hour Requirement by five hours out of 100 hours in the Minimum Hourly Requirement, Defendants docked Fisher's "salary" by five percent (5% of $1,520 = $76).

109.	Fisher complained about the Docking Policy on multiple occasions with Defendants. She specifically requested that Defendants provide a written version of the Docking Policy and protested that the docking of her pay was "illegal."

110.	Anderson laughed at Fisher when she asked if there was a "rule book" where she could review the terms of the Docking Policy.

111. The Docking Policy was never formally reduced to writing, upon information and belief, because Defendants knew the policy was unlawful and would not be endorsed by their employment attorneys.

112. Following the termination of her employment, Fisher complained *pro se* to the U.S. Department of Labor ("USDOL") about the unlawful reductions to her paychecks.

113. The USDOL conducted an investigation, holding an initial conference on March 11, 2019 and a final conference on April 25, 2019, both at the Tryon Office.

114. Patterson and Taylor attended both meetings on behalf of Patterson Pizza.

115. The USDOL found that Patterson Pizza had violated the FLSA through the Docking Policy.

116. The USDOL relied on representations made by Patterson and Taylor in reaching its decision on how to dispose of the investigation.

117. Patterson made the following representations to the USDOL as of March 11, 2019 and/or April 25, 2019:

   a. Patterson Pizza owned and operated only four Domino's Pizza restaurants.

   b. Notwithstanding the docking of Fisher's paychecks, Patterson Pizza had never before deducted from a general manager's salary.

   c. Notwithstanding the docking of Fisher's paychecks, Patterson Pizza had never before deducted from a general manager's salary because there had never been an instance when a general manager did not "elect" to use PTO for violations of the Minimum Hour Requirement, pursuant to the Docking Policy.

118.     Each of the representations in the preceding paragraph is materially false and, upon information and belief, Patterson knew the representations to be false when he made them to the USDOL.

119.     In fact, the Defendants' policy of docking paychecks, pursuant to the Docking Policy, remained ongoing at the time of DOL investigation.

120.     Defendants docked from Kisser's paychecks, pursuant to the Docking Policy, before she quit her employment on March 3, 2019.

121.     Defendants docked from multiple of Kisser's paychecks, including without limitations, those paid on around February 5, 2019; February 19, 2019; and March 5, 2019.

122.     Defendants' wage and hour violations, as detailed herein, are part of a larger failure to comply with employment laws.

123.     The USDOL also found that Patterson Pizza had violated the Family Medical Leave Act (FMLA) with respect to Fisher.

124.     Defendants never advised the named Plaintiffs of their right to 12 weeks of leave under the Family Medical Leave Act (FMLA), including during and after a pregnancy. Both Fisher and Kisser were unaware of their rights under the FMLA and guarded their limited PTO when they learned they were pregnant, in anticipation of future need.

125.     Both Fisher and Kisser were expected to receive and respond to work-related communications up until the day their children were born.

126.     Both Fisher and Kisser returned to work for Defendants approximately six weeks after the births of their respective children.

## NCWHA VIOLATIONS (CLASS ACTION ALLEGATIONS)

127.    The named Plaintiffs further seek to represent a class of all other similarly situated persons under Rule 23(b)(3) of the Federal Rules of Civil Procedure, for back wages, unauthorized wage deductions, and liquidated damages under the NCWHA (**"NCWHA Plaintiff Class"**).

128.    Defendants promised to pay bonus wage payments to the named Plaintiffs and all other similarly situated person (the **"Bonus Wages"**).

129.    For purposes of the claims brought under the NCWHA, "other similarly situated persons" shall refer to each and every person who was (a) employed by Defendants as a general manager of a Domino's Pizza restaurant in the state of North Carolina at any time during the two years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, and (b) did not receive the full amount of the Bonus Wage when due.

130.    The putative NCWHA Plaintiff Class is so numerous that joinder is impractical. The number of members of the NCWHA Plaintiff Class is estimated to be approximately one hundred (100) persons.

131.    The named Plaintiffs have a personal interest in issues of law and fact that are common with the putative NCWHA Plaintiff Class; the claims of the named Plaintiffs are typical of the claims of the members of the NCWHA Plaintiff Class; and the named Plaintiffs and their undersigned counsel will adequately represent and protect the interest of each of the members of the NCWHA Plaintiff Class.

132.     Questions of law and fact common to members of the putative NCWHA Plaintiff Class predominate over any question affecting only an individual member or members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

133.     The questions of law or fact which are common to members of the putative NCWHA Plaintiff Class and which predominate over any other questions affecting only individual members of the class include whether Defendants failed to pay the Bonus Wages when due, based upon (a) the Defendants' systematic failure to obtain a written authorization from the named plaintiffs and each NCWHA Plaintiff Class member in the form required by section 25.8 of the NCWHA; (b) the Defendants' systematic failure to make the bonus payments on the promised timeline violated section 25.6 of the NCWHA; and (c) whether the Defendants failed to make the bonus payments in the promised amounts by systematically miscalculating the bonuses based on artificially deflated enterprise-wide profit numbers, in violation of section 25.6 of the NCWHA.

134.     The identity of the putative NCWHA Plaintiff Class is readily definable, and prosecution of this action as class actions will eliminate the possibility of repetitive litigation.

135.     Separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the class, which could establish incompatible standards of conduct for Defendants.

136.     Because the damages suffered by individual members of the putative NCWHA Plaintiff Class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them.

137.    Defendants promised the named Plaintiffs and all other similarly situated persons to pay the Bonus Wages in an amount specified in a written policy (the **"Bonus Policy"**).

138.    Defendants further promised the named Plaintiffs and all other similarly situated persons to pay the Bonus Wages at the start of the second period following the period in which the bonus was earned.

139.    Pursuant to the Bonus Policy, Defendants claim a right to deduct an unspecified amount from the Bonus Wage, including (a) "for any [cash] shortages over 0.1%" and (b) "for any team member rude concerns."

140.    At all times material to this action, pursuant to the Bonus Policy, Defendants have made deductions from the Bonus Wage of the named Plaintiffs and other similarly situated persons in the absence of any written authorization from the same, which (i) is signed on or before the payday for the pay period from which the deduction is to be made, (ii) indicates the reason for the deduction, and/or (iii) states the actual dollar amount of the deduction.

141.    At all times material to this action, pursuant to the Bonus Policy, Defendants have made deductions from the Bonus Wage of the named Plaintiffs and other similarly situated persons without providing advanced written notice to Plaintiffs and others of the amount to be deducted.

142.    At all times material to this action, pursuant to the Bonus Policy, Defendants have made deductions from the Bonus Wage of the named Plaintiffs, including for alleged cash shortages, without giving any written notice of the opportunity to withdraw any authorization provided by the same.

143.    At all times material to this action, Defendants have failed to make timely payment of the Bonus Wages to the named Plaintiffs and other similarly situated persons when

promised and due, i.e., at the start of the second period following the period in which the bonus was earned.

144.    Upon information and belief, the Bonus Wage checks each period are issued from the bank at the same time for each of the named Plaintiffs and other similarly situated persons.

145.    The Bonus Wage, purportedly, is calculated based on Defendants' combined Average Weekly Unit Sales (AWUS), and the Defendants promise to base the Bonus Wage on the unadultered AWUS.

146.    At all times material to this action, Defendants have failed to provide any written notice to the named Plaintiffs and all other similarly situated persons to document the specific calculation methods used to determine the AWUS and, by extension, the amount of the Bonus Wages.

147.    The amount of the Bonus Wages, accordingly, is often based on vague and confusing figures.

148.    Upon information and belief, Defendants manipulate the calculation of the AWUS to their advantage, to artificially deflate the Bonus Wages in fact paid to the named Plaintiffs and all other similarly situated persons.

### FIRST CAUSE OF ACTION: UNPAID OVERTIME (FLSA)

149.    All other paragraphs of this Complaint are incorporated herein by reference.

150.    At all times material to this action, Defendants misclassified the named Plaintiffs and all other persons similarly situated as exempt from overtime pay requirements, by misapplying the "executive" employee exemption found in section 213(a)(1) of the FLSA.

151.    In order to properly be considered exempt, executive employees must be paid on a salaried basis at a rate of not less than $455 per week, as further detailed in the federal regulations (29 CFR § 541.100).

24

152.     Under the FLSA, an individual is considered to be employed on a salaried basis if, under an employment agreement, the individual receives each pay period a predetermined amount constituting all or part of their compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

153.     The named representative Plaintiffs, as well as all other similarly situated persons, were and/or are subject to the same policies, conduct, and practices of Defendants, as set forth above.

154.     Defendants applied the same Docking Policy to the named Plaintiffs as it did to all other similarly situated persons.

155.     The Docking Policy is a clear and particularized policy for making deductions from the paychecks of the named Plaintiffs and all other similarly situated persons.

156.     At all times material to this action, Plaintiffs and all other similarly situated persons were covered by the Docking Policy, that is, a policy that permits disciplinary or other deductions in pay as a practical matter.

157.     The Docking Policy constitutes an actual practice of making impermissible deductions to the pay of the named Plaintiffs and all other similarly situated persons, based on the quality and/or quantity of the work performed.

158.     The Docking Policy further effectively communicated and continues to communicate a significant likelihood of said impermissible deductions to the named Plaintiffs and all other similarly situated persons.

159.     Pursuant to the Docking Policy, the predetermined amount paid by Defendants to the named Plaintiffs and all other similarly situated persons was subject to reduction because of variations in the quality and/or quantity of the work performed.

25

160.     The named Plaintiffs and all other similarly situated persons did not receive their full wage payment for all weeks in which they performed any work, without regard to the number of days and/or hours worked.

161.     None of the exceptions in 29 CFR Sec. 541.118—which otherwise allow for reductions to pay while maintaining salaried statutes—apply to the Docking Policy.

162.     Accordingly, the named Plaintiffs and all other similarly situated persons were not and are not paid "on a salary basis" within the meaning of the FLSA.

163.     The executive employee exemption did not and does not apply to the named Plaintiffs or any of the other similarly situated persons because, at all times material to this action, Defendants have failed to pay them on a salaried basis, pursuant to the requirements of the executive employee exemption under the FLSA (29 CFR § 541.100).

164.     No other exemption from overtime premium pay applies to the named Plaintiffs and the other similarly situated persons, who are properly non-exempt from overtime premium pay under the FLSA.

165.     Defendants have failed and continue to fail to pay the named Plaintiffs and all other similarly situated persons the required overtime premium pay of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per workweek.

166.     Defendants have thereby violated provisions of the FLSA, resulting in damages in the form of unpaid wages, incurred and incurring costs, and reasonable attorneys' fees.

167.     In addition to unpaid wages owing to the named Plaintiffs and all other similarly situated persons, they also are entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and/or prejudgment interest.

168.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with this complaint, are the consents to become party-plaintiffs forms signed by the named representative plaintiffs in this lawsuit.

169.     The actions of the Defendants, in failing to compensate the Plaintiffs in accordance with the provisions of the FLSA, were not in good faith and/or otherwise made with a reasonable basis for believing that the conduct complied with the FLSA.

170.     There are numerous other persons who are similarly situated to the named Plaintiffs who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All such persons, as identified more fully in Paragraph 96, should receive notice and the opportunity to join the present lawsuit.

**SECOND CAUSE OF ACTION: FAILURE TO PAY WAGES WHEN DUE (NCWHA)**

171.     All other paragraphs of this Complaint are incorporated herein by reference.

172.     Defendants made unlawful deductions from the Bonus Wages that were due the named Plaintiffs and the members of the NCWHA Plaintiff Class, as defined in Paragraph 129, when Defendants made deductions without the written authorization required by N.C. Gen. Stat. § 95-25.8.

173.     Defendants did not pay all promised wages due when those wages were due to the named Plaintiffs and the NCWHA Plaintiff Class, in violation of N.C. Gen. Stat. § 95-25.6.

174.     As a result of these actions of the Defendants, in violation of their rights under N.C. Gen. Stat. § 95-25.6 and 25.8, Plaintiffs and the NCWHA Plaintiff Class they seek to represent have suffered damages in the form of unpaid wages that may be recovered from

Defendants, jointly and severally, under N.C. Gen. Stat. § 95-25.22, plus liquidated damages in an equal amount.

WHEREFORE, Plaintiffs Staysha Fisher and Christa Kisser, on behalf of themselves and all other similarly situated persons, pray and demand judgment against Defendants, jointly and severally, as follows:

1. that process issue against Defendants and that the Defendants be required to answer within the time period provided by applicable law;

2. that the Court issue notice to all similarly situated employees, past or present, be given the opportunity to join in this lawsuit as party-plaintiffs by filing written consents pursuant to 29 U.S.C. 2l6(b);

3. that the named Plaintiffs and all others who file consents, be awarded damages against Defendants, jointly and severally, in the amount of their unpaid wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. 216(b) and/or prejudgment interest;

4. that the NCWHA Plaintiff Class be certified as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure for back wages and liquidated damages under N.C. Gen. Stat. § 95-25.22, with respect to the NCWHA Plaintiff Class defined herein;

5. that the named Plaintiffs and all other members of the certified class be awarded damages against Defendants, jointly and severally, in the amount of their unpaid wages and an additional equal amount as liquidated damages pursuant to N.C. Gen. Stat. 95-25.22 and/or prejudgment interest;

6. that Defendants, jointly and severally, be required to pay Plaintiffs' attorneys fees, pursuant to 29 U.S.C. § 216(b) and/or N.C. Gen. Stat. § 95-25.22(d);

7.       that Defendants, jointly and severally, be required to pay the costs and expenses of this action;

8.        that Plaintiffs be granted such other, further and general relief to which they may show themselves entitled; and

9.       that a jury be impaneled to hear this cause of action at trial.

This, the 21st day of October, 2019.

**/s/ Eric Spengler**
Eric Spengler
N.C. State Bar. No. 47165
SPENGLER & AGANS PLLC
352 N. Caswell Road
Charlotte, NC 28204
eric@spengleraganslaw.com
(704) 910-5469 (phone)
(704) 730-7861 (fax)

*Attorney for Plaintiffs*